MARY K. WARREN
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-7815
Email: mary.warren@cfpb.gov
OWEN MARTIKAN, CA Bar #177104 - Local Counsel
301 Howard St., Suite 1200
San Francisco, CA 94105
Phone: (415) 844-9790
Email: owen.martikan@cfpb.gov
*Attorneys for Plaintiff*
*Bureau of Consumer Financial Protection*

WIECHERT, MUNK & GOLDSTEIN, PC
David W. Wiechert, SBN 94607
27136 Paseo Espada, Suite B1123
San Juan Capistrano, California 92675
Telephone: (949) 361-2822
Email: dwiechert@aol.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>Plaintiff,<br><br>v.<br><br>Performance SLC, LLC, Performance Settlement, LLC, and Daniel Crenshaw,<br><br>Defendants. | Case No. 8:20-cv-02132-DOC(DFMx)<br><br>**PARTIES' STIPULATION TO FINAL JUDGMENT AND ORDER AS TO ALL DEFENDANTS** |

Plaintiff Bureau of Consumer Financial Protection ("Bureau") commenced this civil action on November 5, 2020 with a Complaint to obtain injunctive and monetary relief and civil penalties from Performance SLC, LLC ("PSLC"), Performance Settlement, LLC ("PSettlement"), and Daniel Crenshaw ("Individual Defendant") (collectively, "Defendants"). The Complaint alleges violations of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and of sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1)(A), in connection with Defendants' telemarketing and offering and sales of debt-relief services.

Plaintiff and Defendants have agreed to entry of a Stipulated Final Judgment and Order (lodged concurrently with this Stipulation) to resolve all claims against the Defendants. Plaintiff and Defendants have consented to entry of the Stipulated Final Judgment and Order without trial or adjudication of any issue of law or fact herein.

Plaintiff and Defendants hereby stipulate to entry of the Stipulated Final Judgment and Order with the following terms:

## I. FINDINGS

1. This Court has jurisdiction over the parties and the subject matter of this action and venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) and (c), and 12 U.S.C. § 5564(f).

2. Defendants neither admit nor deny the allegations in the Complaint, except as specifically stated herein. Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

3. The Complaint alleges claims upon which relief may be granted.

4. The relief provided in this Order is appropriate and available pursuant to sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564 and 5565.

5. Since January 2016, in the course of telemarketing and providing, offering to provide, or arranging for others to provide a debt-relief service, Defendant PSLC and Individual Defendant requested and received payment of fees or consideration before:

(a) Defendant PSLC renegotiated, settled, reduced, or otherwise altered the terms of one debt for the consumer pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the consumer; and (b) the consumer made at least one payment pursuant to that agreement.

6. Since January 2016, in the course of telemarketing and providing, offering to provide, or arranging for others to provide a debt-relief service, Defendant PSLC has failed to clearly and conspicuously disclose to consumers required to place funds in trust accounts that they owned the funds and could withdraw them at any time without penalty.

7. Since January 2016, in the course of telemarketing and providing, offering to provide, or arranging for others to provide a debt-relief service, Defendant PSettlement has asked consumers to sign and relied upon a pre-authorization form allowing Defendant PSettlement to agree on consumers' behalf to settlements over a certain percentage of the consumer's enrolled debt without further authorization from the consumer.

8. Since August 2018, Defendant PSettlement and Individual Defendant, in the course of telemarketing and providing, offering to provide, or arranging for others to provide a debt-relief service, engaged in deceptive acts and practices in order to induce consumers referred by OneLoanPlace.com to enroll in Defendant PSettlement's debt-relief program.

9. Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party agrees to bear its own costs and expenses, including, without limitation, attorney's fees.

10. Entry of this Order is in the public interest.

## II.   DEFINITIONS

11. The following definitions apply to this Order:

    a. "Affected Consumers" means all Affected PSLC Consumers and all Affected PSettlement Consumers.

b. "Affected PSLC Consumer" means a consumer who (i) paid all or a portion of PSLC's fee into a dedicated trust account, or (ii) entered into a credit plan agreement to finance payment of PSLC's fee.

c. "Affected PSettlement Consumer" means a consumer who was referred to PSettlement by OneLoanPlace.com from August 27, 2018 to the present and paid a fee to PSettlement.

d. "Assist[ing] Others" includes, but is not limited to:

    i. consulting in any form whatsoever;

    ii. providing paralegal or administrative support services;

    iii. performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

    iv. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication or advertisement;

    v. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

    vi. providing names of, or assisting in the generation of, potential customers;

    vii. performing marketing, billing, or payment services of any kind; and

    viii. acting or serving as an owner, officer, director, manager, or principal of any entity that markets or provides Debt-Relief Services.

e. "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in section 1002(5) of the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes, but is not limited to:

    i. engaging in deposit-taking activities, transmitting or exchanging funds, or otherwise acting as a custodian of funds or any financial instrument for use by or on behalf of a consumer;

    ii. providing payments or other financial data processing products or services to a consumer by any technological means, including processing or storing financial or banking data for any payment instrument, or through any payments systems or network used for processing payments data, including payments made through an online banking system or mobile telecommunications network; or

    iii. providing financial advisory services to consumers on individual financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure.

f. "Corporate Defendants" means PSLC and PSettlement.

g. "Debt-Relief Service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including, but not limited to a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

h. "Defendants" means the Corporate Defendants and the Individual Defendant, individually, collectively, or in any combination.

i.  "Effective Date" means the date on which this Order is entered by the Court.

j.  "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

k.  "Individual Defendant" means Daniel Crenshaw and any other names by which he might be known.

l.  "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

m.  "PSettlement" means Performance Settlement, LLC, and its successors and assigns.

n.  "PSLC" means Performance SLC, LLC, and its successors and assigns.

o.  "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in the Complaint.

## **CONDUCT PROVISIONS**

III.   **BAN ON DEBT-RELIEF PRODUCTS AND SERVICES AS TO DEFENDANT PSLC AND INDIVIDUAL DEFENDANT**

12.   Defendant PSLC, whether acting directly or indirectly, is permanently restrained and enjoined from:

a.  Advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service;

b.  Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; or

c.  Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person that is engaged in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service.

13.  Individual Defendant, whether acting directly or indirectly, is restrained and enjoined for a period of five years from the Effective Date from:

a.  Advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service;

b.  Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; or

c.  Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person that is engaged in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service.

Nothing in this Order shall be read as an exception to Paragraphs 12 and 13.

## IV.  PROHIBITION ON CERTAIN MISREPRESENTATIONS, REFERRALS AND PRACTICES BY DEFENDANT PSETTLEMENT

14.  Defendant PSettlement and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any Debt-Relief Service, shall not misrepresent, or Assist Others in misrepresenting, expressly or impliedly, the nature of the services it provides in any way, including but not limited to:

a.  Misrepresenting its identity;

b.  Misrepresenting its ability to make loans; and

c.  Misrepresenting its ability to evaluate or qualify consumers for loans.

15.     Defendant PSettlement, whether acting directly or indirectly, shall not receive referrals from, or pay compensation for referring its customers to, any entity that purports to offer, provide, arrange or facilitate any loans for consumers.

16.     Defendant PSettlement, whether acting directly or indirectly, shall not use a preauthorization form to negotiate settlement of debts on behalf of customers, and instead must either obtain the signature of the customer on the specific proposed settlement agreement or offer of settlement, or a written authorization by the customer to sign or agree to the settlement agreement on the customer's behalf obtained after the customer has reviewed the specific settlement agreement.

## V.     PROHIBITION ON DECEPTIVE PRACTICES AS TO INDIVIDUAL DEFENDANT

17.     Individual Defendant, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of Consumer Financial Products and Services, shall not misrepresent, or Assist Others in misrepresenting, expressly or impliedly:

   a.  The ability of Individual Defendant or any Person that Individual Defendant owns, controls, or performs managerial functions for to make loans;

   b.  The ability of Individual Defendant or any Person that Individual Defendant owns, controls, or performs managerial functions for to evaluate or qualify consumers for loans; or

   c.  Any other fact material to consumers concerning Consumer Financial Products and Services offered by Individual Defendant or any Person that Individual Defendant owns, controls, or performs managerial functions for, such as the total costs or the purpose of fees paid by consumers.

## VI.   PROHIBITION ON REQUESTING OR RECEIVING ADVANCE FEES AS TO INDIVIDUAL DEFENDANT

18.     Individual Defendant, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of Debt-Relief Services, shall not request or receive payment of fees or consideration before: (i) any Person owned or controlled by Individual Defendant or for whom Individual Defendant performs managerial functions has renegotiated, settled, reduced, or otherwise altered the terms of one debt for the consumer pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the consumer; and (ii) the consumer has made at least one payment pursuant to that agreement.

## VII.   INJUNCTION AS TO DEFENDANT PSLC AND INDIVIDUAL DEFENDANT CONCERNING COLLECTING PAYMENTS FROM CONSUMERS

19.     As of the Effective Date, Defendant PSLC and Individual Defendant and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from causing any charges to be made to, or collecting, attempting to collect, causing collection or attempts to collect, selling, assigning, or otherwise transferring any right to collect, payment from any Affected PSLC Consumer.

## VIII.   PROHIBITED USE OF CONSUMER INFORMATION BY DEFENDANT PSLC AND INDIVIDUAL DEFENDANT

20.     Defendant PSLC and Individual Defendant and their officers, agents, servants, employees, and attorneys and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, may not:

     a.     disclose, use, or benefit from customer information, including names, addresses, telephone numbers, email addresses, social security numbers, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that the Defendant obtained before the Effective Date in connection with offering or providing Debt-Relief Services related to student loans;

     b.     attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any consumer who purchased or agreed to purchase Debt-Relief Services related to student loans from Defendant PSLC.

*However*, customer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

## MONETARY PROVISIONS

### IX.   ORDER TO PAY REDRESS

21.    A judgment for monetary relief is entered in favor of the Bureau and against Defendant PSLC and Individual Defendant, jointly and severally, in the amount of $10,448,467.90 for the purpose of providing redress to Affected PSLC Consumers; however, full payment of this judgment will be suspended upon satisfaction of the obligations in Paragraph 24 of this Section, Paragraphs 32 and 33 of Section XI, Paragraphs 37 through 42 of Section XII, and subject to Section X of this Order.

22.    A judgment for monetary relief is entered in favor of the Bureau and against Defendant PSettlement and Individual Defendant, jointly and severally, in the amount of $704,350.30 for the purpose of providing redress to Affected PSettlement Consumers; however, full payment of this judgment will be suspended upon satisfaction of the obligations in Paragraph 23 and 24 of this Section, Paragraphs 32 and 33 of Section XI, Paragraphs 37 through 42 of Section XII, and subject to Section X of this Order.

23.    If Defendant PSettlement or Defendant Crenshaw secures a tax credit with regard to any federal, state, or local tax, such Defendant must (a) immediately notify the Enforcement Director in writing, (b) provide the Bureau with documentation from the relevant tax authority showing the amount of the credit, and (c) within 10 days of receiving the funds or monetary benefit, transfer to the Bureau the full amount of such funds or monetary benefit, less the amount of $70,000.00 which the Bureau has agreed such Defendant may retain ("Adjusted Tax Benefit Payment"), according to the Bureau's wiring instructions.  After the Bureau receives the Adjusted Tax Benefit Payment, the amount of the suspended judgment referenced in Paragraph 22 will be reduced by the amount of the Adjusted Tax Benefit Payment and the Adjusted Tax Benefit Payment will be applied toward satisfaction of the monetary judgment entered in Paragraph 22.

24.    With regard to any redress ordered under this Section, if any Defendant receives, directly or indirectly, any reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, or if any Defendant secures a tax deduction or tax credit with regard to any federal, state, or local tax, such Defendant must: (a) immediately notify the Enforcement Director in writing, and (b) within 10 days of receiving the funds or monetary benefit, such Defendant must transfer to the Bureau the full amount of such funds or monetary benefit ("Additional Payment") to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions. After the Bureau receives the Additional Payment, the amount of the suspended judgment referenced in Paragraphs 21 or 22 will be reduced by the amount of the Additional Payment and the Additional Payment will be applied toward satisfaction of the monetary judgment entered in Paragraphs 21 or 22.

25.    Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers, including, but not limited to, refund of moneys, restitution, damages or other

monetary relief, and for any attendant expenses for the administration of any such redress.

26. If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau will deposit any remaining funds in the United States Treasury as disgorgement. Defendants will have no right to challenge the Bureau's choice of remedies under this Section, and will have no right to contest the manner of distribution chosen by the Bureau.

27. Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## X. EFFECT OF MISREPRESENTATION OR OMISSION CONCERNING FINANCIAL CONDITION

28. The suspension of the monetary judgment entered in Section IX of this Order is expressly premised on the truthfulness, accuracy, and completeness of Defendants' financial statements and supporting documents submitted to the Bureau, which such Defendants assert are truthful, accurate, and complete, and which include:

    a. Financial Disclosure Statements of Individual Defendant, including the attachments, signed on February 1, 2022 and submitted to the Bureau on or about that date, and the supplemental affidavit of Individual Defendant, including the attachments, signed on March 18, 2022 and submitted to the Bureau on or about that date;

    b. Financial Disclosure Statements of Defendant PSLC, including the attachments, signed on February 1, 2022 and submitted to the Bureau on or about that date; and

    c. Financial Disclosure Statements of Defendant PSettlement, including the attachments, signed on February 1, 2022 and submitted to the Bureau on or about that date.

29.     If upon motion by the Bureau, the Court determines that any Defendant has failed to disclose any material asset or that any of his or its financial statements or oral testimony contain any material misrepresentation or omission, including materially misstating the value of any asset, the Court shall terminate the suspension of the monetary judgment entered in Section IX against that Defendant and without further adjudication, shall reinstate the monetary judgment and the full judgment shall be immediately due and payable, less any amounts paid to the Bureau under Section IX of this Order.

30.     If the Court terminates the suspension of the monetary judgment under this Section, the Bureau will be entitled to interest on the judgment, computed from the Effective Date, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

31.     Provided, however, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and, provided further, that proceedings instituted under this provision would be in addition to, and not in lieu of any other civil or criminal remedies as may be provided by law, including any other proceedings that the Bureau may initiate to enforce this Order.

**XI.     ORDER TO PAY CIVIL MONEY PENALTIES**

32.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, and continuing until the Effective Date, and taking into account the factors in 12 U.S.C. § 5565(c)(3), a judgment for a civil money penalties is entered in favor of the Bureau and against the Corporate Defendants and the Individual Defendants in the following amounts:  Individual Defendant must pay $30,000; Defendant PSLC must pay $1.00 and Defendant PSettlement must pay $1.00.

These amounts are based on each Defendant's limited ability to pay as attested to in his or its financial statements listed in Section X above.

33.     Within 15 days of the Effective Date, Defendants must pay the civil money penalties by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

34.     The civil money penalties paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

35.     Defendants must treat the civil money penalties paid under this Order as penalties paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

        a.  Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

        b.  Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including, but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

36.     Individual Defendant agrees that the civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and thus, as to Individual Defendant, it is not subject to discharge under the Bankruptcy Code, 11 U.S.C. § 523(a)(7).

## XII.   ADDITIONAL MONETARY PROVISIONS

37.     In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding payments not paid from the date of default to the date of payment, and will immediately become due and payable.

38.     Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

39.     The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Bureau, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order, such as a nondischargeability complaint in any bankruptcy case.

40.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against each Defendant, even in such Defendant's capacity as debtor-in-possession.

41.     Under 31 U.S.C. § 7701, Defendants, unless they have already done so, must furnish to the Bureau their taxpayer identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

42.     Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendants paid or are required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.  To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled to, nor may Defendants benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendants based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil

Penalty Fund, Defendants must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the United States Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

43.     Upon written request, any consumer reporting agency must furnish consumer reports to the Bureau concerning Individual Defendant under Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 168l b(a)(1), which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## COMPLIANCE PROVISIONS

## XIII.  REPORTING REQUIREMENTS

44.     Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including, but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' name or address. Defendants must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

45.     Within 7 days of the Effective Date, each Defendant must:

a. Designate at least one telephone number and email, physical and postal address as points of contact, which the Bureau may use to communicate with such Defendant;

b. Identify all businesses for which such Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email and Internet addresses;

c. Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

d. For Individual Defendant, identify his telephone numbers and email, Internet, physical and postal addresses, including all residences; and

e. For Individual Defendant, describe in detail his involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including his title, role, responsibilities, participation, authority, control, and ownership.

46. Defendants must report any change in the information required to be submitted under Paragraph 45 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

47. Ninety days after the Effective Date, and again one year after the Effective Date, each Defendant must submit to the Enforcement Director an accurate written compliance progress report sworn under penalty of perjury ("Compliance Report"), which, at a minimum:

a. Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which such Defendant has complied with each such paragraph and subparagraph of this Order; and

b. Attaches a copy of each Order Acknowledgment obtained under Section XIV, unless previously submitted to the Bureau.

48. For the Corporate Defendants, the Compliance Report required in Paragraph 47 must be sworn to under penalty of perjury by the owner of each Corporate Defendant. For Individual Defendant, the Compliance Report required in Paragraph 47 must be sworn to, personally, under penalty of perjury.

## XIV. ORDER DISTRIBUTION AND ACKNOWLEDGEMENT

49. Within 7 days of the Effective Date, each Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

50. Within 30 days of the Effective Date, each Corporate Defendant and the Individual Defendant, for any business for which he is majority owner or which he

directly or indirectly controls, must deliver a copy of this Order to each of its board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

51.     For 5 years from the Effective Date, each of the Corporate Defendants and the Individual Defendant, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section XIII, any future board members and executive officers, before they assume their responsibilities.

52.     Each Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with all the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

53.     Within 90 days of the Effective Date, Defendants must provide the Bureau with a list of all persons and their titles to whom this Order was delivered through that date under Paragraphs 50 and 51 and a copy of all signed and dated statements acknowledging of receipt of this Order under Paragraph 52.

**XV.     RECORDKEEPING**

54.     Defendants, including for any business for which the Individual Defendant, individually or collectively with any other Defendant, is a majority owner or which he directly or indirectly controls, must create, for at least 10 years from the Effective Date, all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.  Defendants must retain these documents for at least 10 years after creation and make them available to the Bureau upon the Bureau's request.

55.     The Corporate Defendants each must maintain, for at least 5 years from the Effective Date or 5 years after creation, whichever is longer:

a. Financial records, including, but not limited to, tax returns and accounting records showing gross and net revenues, all costs incurred in generating revenues, and the resulting net profit or loss;

b. For any Affected Consumer, records showing the person's name, email and postal address, telephone number, dates and dollar amounts of payments made, and the quantity and description of goods and services purchased;

c. any and all documentation required to complete the Bureau's individual and corporate financial disclosure forms; and

d. All consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any response to those complaints or requests.

56.    The Individual Defendant must maintain, for at least 5 years from the Effective Date or 5 years after creation, whichever is longer, financial records, including, but not limited to, individual and corporate tax returns, credit reports, any and all documentation required to complete the Bureau's individual and corporate financial disclosure forms, and accounting records showing gross and net revenues, all costs incurred in generating revenues, and the resulting net profit or loss.

57.    Defendants must make the documents identified in Paragraphs 54-66 available to the Bureau upon the Bureau's request.

**XVI.  NOTICES**

58.    Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Performance SLC, LLC*, Case No. 8:20-cv-02132" and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

Assistant Director for Enforcement
Bureau of Consumer Financial Protection
ATTENTION: Office of Enforcement

PARTIES' STIPULATION TO FINAL JUDGMENT AND ORDER AS TO ALL DEFENDANTS

18

1700 G Street, N.W.
Washington, DC 20552

## XVII.  COOPERATION WITH THE BUREAU

59.     Defendants must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendants must provide such information in their or their agents' possession or control within 14 days of receiving a written request from the Bureau.

60.     Defendants must cooperate fully with the Bureau in this matter and in any investigation or litigation related to or associated with the conduct described in the Complaint, including, but not limited to, providing information, documents, and testimony. Defendants must provide truthful and complete information, evidence, and testimony. The Individual Defendant must appear and each of the Corporate Defendants must cause its officers, employees or agents to appear, for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 10 days written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## XVIII.  COMPLIANCE MONITORING

To monitor Defendants' compliance with this Order, including the financial representations upon which the monetary judgment was partially suspended:

61.     Within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

62.     For purposes of this Section, the Bureau may communicate directly with Defendants, unless Defendants retain counsel related to these communications.

63.     Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview. The person interviewed may have counsel present.

64.     Nothing in this Order will limit the Bureau's lawful use of compulsory process, including pursuant to 12 C.F.R. § 1080.6.

## XIX.  TRANSFER OF OPERATIONS

65.     Should Defendants seek to transfer or assign all or part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XX.  RETENTION OF JURISDICTION

66.     All pending motions are denied as moot.

67.     The Court will retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Order.

## XXI.  SERVICE

68.     This Order may be served upon Defendants by electronic mail, certified mail, or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau.

Dated: April 29, 2022

Respectfully submitted,

/s/ Mary K. Warren
Mary K. Warren
Senior Litigation Counsel
Bureau of Consumer Financial Protection
1700 G St., NW
Washington, DC 20552
Tel: (202) 435-7815
Email: mary.warren@cfpb.gov

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

/s/ David W. Wiechert
David W. Wiechert (CBN 94607)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wiechert Munk & Goldstein
27136 Paseo Espada, Ste. B1123
San Juan Capistrano, CA 92675
(949) 361-2822
dwiechert@aol.com

*Appearing Specially For, and on behalf of All Defendants*[1]

---

[1] I, Mary K. Warren, attest that Defendants' counsel concurs in this filing's content and has authorized me to submit his electronic signature with this filing. *See* LR 5-4.3.4(a)(2)(i).

PARTIES' STIPULATION TO FINAL JUDGMENT AND ORDER AS TO ALL DEFENDANTS

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, causing a Notice of Electronic Filing to be sent to counsel for Defendants.

<u>/s/ Mary K. Warren</u>
Mary K. Warren